## UNITED STATES v. BRAVE BEAR.

1.   BOUNDARIES OF JUDICIAL DISTRICT:   JUDICIAL COGNIZANCE OF:   The court will take judicial cognizance of the external boundary lines of its jurisdiction; and that a crime committed at a place on an Indian reservation within such boundary lines, is within the jurisdiction of the court.

2.   INDIAN COUNTRY:   Executive order reserving a portion of the public domain as an addition to the Sioux Indian reservation:   Jurisdiction of crime committed in: Effect of restoring same to public domain.   This case affirms the decision of this court in the case of U. S. v. Knowlton, post.

3.   HOMICIDE COMMITTED PRIOR TO REVOCATION:   INDICTMENT SUBSEQUENT.   The revocation of the executive order creating such reservation, after the commission of a homicide, and before the indictment has been found, does not deprive the court of jurisdiction to indict and try the defendant for such offense.

*Writ of error to the Second Judicial District Court.*

The facts are stated in the opinion of the court.

*Oliver Shannon,* for plaintiff in error.

*Hugh J. Campbell,* U. S. Attorney for defendant in error.

No briefs on file.

EDGERTON, C. J. —On December 5th, 1881, the defendant was indicted by the grand jury in the Second Judicial District for the murder of Joseph Johnson, to which indictment the defendant plead not guilty on December 12th, 1881.

The defendant was tried on said indictment, and a verdict of guilty was rendered January 5th, 1882. After overruling motions in arrest of judgment, and for a new trial, on January 9th 1882 the sentence of death was pronounced against the defendant, and thereupon this writ of error was sued out.

The homicide is alleged in the indictment, to have been committed on May 15th, 1879, in the Second Judicial District and territory of Dakota, in the Indian country and in a place and district of country under the exclusive jurisdiction of the United States.

On the trial the judge gave the following charge, *inter alia,* to the jury.

"If the jury find, as a matter of fact, that in May, 1879 the deceased, Joseph Johnson, was murdered by the defendant, and that the place where the murder was committed, was on the east side of the Missouri river, within 20 or 25 miles of Fort Sully, in this territory, and south of the 46th parallel of north latitude, then I charge you as a matter of law, that such a place is within the bounds of the Second Judicial District, and was so on the 15th day of May 1879, and for months before and after that day.

"If the jury find the facts to be as above stated, I also charge you, as a matter of law, that during the year 1879, and up to the month of August, 1879, such place was in the Indian country, and the crime of murder charged in the indictment, if you find such crime to have been committed at the time and place charged, was committed within the jurisdiction of this court.

"And I further charge you, that the subsequent proclamation of President Hayes, of August 9th, 1879, did not oust the jurisdiction of this court, but that it has jurisdiction of this offense, and the place, as charged in the indictment. "

To the giving of these instructions the defendant excepted.

The defendant asked the following instructions: "And now January 4th, 1882, the testimony having been closed the defendant, by his counsel Oliver Shannon, requests the court to charge the jury as follows:

"If you believe, under the evidence, that on the 5th day of December 1881, the time of the finding of the indictment by the

grand jury in this case, that the place of the alleged homicide was not in the body of the said Second Judicial District as averred in the indictment, and further believe from the evidence adduced by the government, that at said date, or before it, that the territory including the place of the alleged homicide, was withdrawn from the Indian reservation, it is your duty to render a verdict of not guilty by reason of a variance between the indictment and the proof," which was refused and the defendant excepted.

The only real question presented is whether the District court had jurisdiction. This may be stated plainly as follows:

At this time, according to the proof, the eastern limit of "said district" was at least twenty-five miles west of the *locus in quo.* The proclamation of President Grant in May 1875, created an addition to the Sioux Reservation, extending some 30 miles east of the left bank of the Missouri river, and included the place of the alleged homicide. In May 1879, the alleged murder occurred. In August following, (1879) the proclamation of President Hayes was issued, abrogating the proclamation of President Grant and restoring the territory, including the place of the alleged homicide, to the public domain; hence the two proclamations left the *locus in quo* at the time the jury found the bill, in the same condition as if no proclamation had been issued. It will be observed that it was some two years and four months after the restoration of the territory to the public domain, under the proclamation of President Hayes, that the grand jury found the bill, to wit., Dec. 5th, 1881.

Thus it will be seen that at the date of the homicide the Second District Court had jurisdiction of the place, it being within the Second Judicial District: and also of the offense, the place being within the Indian country as found by this court in the Knowlton case decided at this term of the court.

In that case the place where the homicide was committed is

within the boundaries of the additions to the Sioux Reservation made by President Grant's executive order of January 11th, 1875. The defendant was tried in the same court in which this case was tried, at the November term 1881, for an alleged homicide committed on April 10th, 1877, in the same district of territory in which this homicide is alleged to have been committed.

In which case the indictment was found in April 1877, after the proclamation of President Grant of January 11th, 1875, and prior to the proclamation of President Hayes of August 9th, 1879.

It was contended by the plaintiff in error (Knowlton), that the District court had no jurisdiction to try the cause, for the reason that the place where the offense was committed was not within the jurisdiction of the court at the time the offense was committed, and if it was that it ceased to be before the trial, to wit, at the date of President Hayes' proclamation of August 9th, 1879.

This court in that case, decided that the place where the offense was committed was, at the time of the commission of the offense, within the Indian country, within the jurisdiction of the court and that President Hayes' proclamation did not oust the court of jurisdiction.

The only remaining question is, did the District Court lose jurisdiction for the reason that the indictment was not found until after President Hayes' proclamation; We think not. The court says in the Knowlton case, " The commission of murder in the Indian country is still a crime against the United States. The same court now has jurisdiction over that particular place to punish crimes there committed against the United States, the judicial district is the same, the jurors are drawn from the same district of country, and moreover Section 13 U. S. Rev. Stat., expressly preserves the jurisdiction of the court, notwithstanding the repeal of a criminal statute, over an offense committed before such repeal. Certainly no greater effect can reasonably be given to

this subsequent executive order than should be given to the express repeal of a statute punishing an act as criminal."

The district court therefore properly exercised its jurisdiction in this case.

We see no error in the questions brought before us, and the judgment of the District Court is        Affirmed.

All Justices concurring.